UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

WORDLOGIC CORPORATION and
602531 BRITISH COLUMBIA LTD.

             Plaintiff,

    v.

FLESKY, INC.

             Defendant.

No.  16-cv-11714

Hon. Joan H. Lefkow

Jury Trial Demanded

### Memorandum in Support of Defendant's Motion to Dismiss

Flesky, Inc., by and through its attorneys Amit Agarwal and William M. Tasch, for its Memorandum in Support of Defendant's Motion to Dismiss, states:

### I.     Introduction

Presuming the complaint's allegations as true does not allow this court to reasonably infer liability. Also, Pat. 7,681,124's claimed invention is not eligible for patent protection. The court should dismiss the complaint under FRCP 12(b)(6).

### II.    Law

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   Analysis

**A. Plaintiffs failed to state a plausible claim for relief because they failed to make any allegations with respect to key claim elements and cannot cite a need for discovery in this simple case as a pretext.**

Plaintiff's allegations do not allow this Court to reasonably infer that the accused product satisfies key claim elements in the representative claims.

| Closest allegation in complaint | Claim limitation in representative claim |
|---|---|
| "With the "Predictions" extension installed, the Fleksy predictive keyboard allows for further modification of the partial text entry, and then displays a further modified list of completion candidates." | "each of the further modified plurality of completion candidates includes a portion matching the accepted completion candidate." 7,681,124 cl. 19(h) |
| "The Fleksy predictive keyboard redirects key input from an application in which text is being entered to the keyboard application itself when a particular key is held for a predetermined amount of time, and then redirects key input back to the original application upon selection of a second key." | "wherein redirecting the input key events to the second process comprises providing representations of further keyboard events to the second process, but not to the first process, for processing." 8,552,984 cl. 1(c) |

Presuming the truth of the allegations on the left does not allow this Court to reasonably infer either that (i) each of Fleksy's further modified completion candidates includes a portion matching the accepted completion candidate; or that (ii) upon redirection of input key events to the second process, Flesky provides representations of further keyboard events to the second process, but not to the first process, for processing.

Each is a requisite intermediary inference before the Court can reasonably infer liability. *Atlas IP, LLC v. City of Naperville*, 2016 WL 3907029 (N.D. Ill. Jul. 19, 2016) ("Applying the ordinary analysis of *Twombly/Iqbal*, [a patentee] must plead that every limitation, or equivalent thereof, in the representative claim can plausibly be found in an accused product."); *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 216CV00801RCJVCF, 2017 WL 58572, at *3 (D. Nev. Jan. 4, 2017) ("The Supreme Court's interpretation of Civil Rule 8(a) requires plausible allegations as to all elements of a cause of action, and the elements of a cause of action for direct infringement

include each limitation of the patent claim at issue."); *Atlas IP, LLC v. Pacific Gas & Electric, Co.*, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016) (dismissing patent infringement complaint which: (i) "entirely fail[ed] to address [a] necessary claim element;" *id.* at *4; and (ii) was "silent as to [another] limitation;" *id.* at *5).

Rule 11 anticipates the inability of plaintiffs to access all infringement evidence *and* accounts the reality that plaintiffs can rarely, without discovery, prove a case on the pleadings. That is why Rule 11 permits information-and-belief pleadings when a plaintiff believes that a reasonable opportunity for further investigation or discovery would support a factual contention. If its Rule 11 investigation led Plaintiff to believe that a reasonable opportunity for further investigation or discovery would support either of the missing factual contentions relevant to these claim limitations, Plaintiff should have pleaded them.

The Court should neither presume the veracity of missing pleadings, nor fill inexplicable gaps in the pleadings, nor otherwise excuse Plaintiff's Rule 8 and 11 inquiry and pleading obligations citing the "need" for discovery in simple, low-tech patent cases like this. The accused product is a smartphone app and a free extension for use with the app. Anyone can download and install the app and extension instantly and for free on any smartphone. Furthermore, every feature of the accused product is designed for technically-untrained end users—not programmers. There are no barriers whatsoever for someone with a *bona fide* interest in forming a good-faith belief about whether the accused product performs any claim element in the asserted claims.

### B.  Plaintiffs failed to state a plausible claim for relief for Count I because the '124 Patent is directed to ineligible subject matter.

Representative claim 19 of the '124 patent has eight steps: (1) receiving a partial text entry; (2) making a list of word completion candidates; (3) displaying the candidates; (4) detecting user selection of a candidate; (5) completing the word; (6) detecting modification of the partial text entry; (7) making a new list of word completion candidates; (8) after a word is selected, make another list of word completion candidates that include the selected word.

3

Weeks ago, in *Tech. Dev. & Licensing*, this Court ruled that the idea of making lists of TV channels was abstract because people engaged in the conventional, routine activity of making mental or paper lists of their favorite TV channels for ages. The '124 patent is directed to listing word completion candidates based on partial information. Much like the conventional routine activity of making mental or paper lists of TV channels, millions of Americans have engaged in the conventional routine activity of making mental or paper lists of word completion candidates based on partial text entries for *decades* while playing the popular kid's game Hangman or playing along to TV's "Wheel of Fortune."



"The Supreme Court has not delimited the precise contours of the 'abstract ideas' category." *Content Extraction*, 776 F.3d at 1346. As a result, the Supreme Court and Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed Cir. 2016). Under the abstract-idea analysis, nothing about making computerized lists of word completion candidates is distinguishable from making computerized lists of selected television channels—both conventional, routine activities that patentees in both cases attempted to privatize by implementing them on a generic computing device. The '124 patent is directed to an abstract idea.

 "A claim that recites an abstract idea must include additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297) (alterations in *Alice* not *Mayo*). Those additional features must be more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298. Claims must do more than simply instruct the practitioner to implement the abstract idea on a generic computer. *Alice*, 134 S. Ct. at 2359–60.

In *Technology Development & Licensing*, this Court deemed it important to consider the

following factors relevant to the patentability inquiry under 35 U.S.C. § 101 ("§ 101"): (a) "whether claim elements using procedures that pre-date the filing of the patent provide the 'inventive concept' necessary to save a patent from a § 101 challenge," (b) "the nature of the problem to be solved; problems that arise uniquely in computing or in an internet context weigh in favor of finding an inventive concept," and (c) whether the claims attempt "to transform an abstract idea to patentable subject matter simply by limiting the method to a particular industry or to a particular technological context."

*First*, none of the claim elements in any of the claims in the '124 patent recite any additional features that are not well-understood, routine, conventional activity. They simply instruct the practitioner to implement the abstract idea of making lists of word completion candidates based on a partial text entered in a personal computing device on a generic keyboard. *Second*, the problem of listing word completion candidates does not arise in computing; people have engaged in this exercise for decades in contexts such as word games (Hangman, Wheel of Fortune, etc.). *Third*, the claims attempt to transform an abstract idea of making lists of word completion candidates to patentable subject matter simply by limiting the method to a particular technological context of entering data into generic keyboards.

Plaintiffs might argue that this patent claims an idea that is an improvement in computer technology itself, citing advances in software keyboard performance, and might cite courts which have considered whether the claims purport to 'improve the functioning of the computer itself,' which may suggest that the claims are not abstract, or instead whether 'computers are invoked merely as a tool' to carry out an abstract process." *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, Nos. 16-CV-00925-LHK, 16-CV-00926-LHK, 2016 WL 3196657, at *10 (N.D. Cal. June 9, 2016) (quoting *Alice*, 134 S. Ct. at 2359 and *Enfish*, 822 F.3d at 1336, respectively).

This argument is wrong. The '124 patent's technology does not improve the performance of the keyboard itself in the slightest. An improvement in touch-screen sensitivity, keyboard materials technology, etc. might constitute an actual improvement in a software or hardware keyboard. This patent only improves *typing performance*, e.g., typing speed, from the vantage point of the *user*—not any attribute inherent to the computing device itself. Consider that the identical false logic could be

advanced in *any* do-it-on-a-computer abstract idea. For example, the following abstract ideas, when implemented on a generic computer, without question *improved* performance of that activity from the vantage point of the user, *e.g.* (i) hedging risk in the commodities market in *Bilski v. Kappos*, 561 U.S. 593 (2010) (same); (ii) updating alarm limits in catalytic conversion processes in *Parker v. Flook*, 437 U.S. 584 (1978) (same); (iii) converting binary-coded decimal numbers into pure binary numbers in *Gottschalk v. Benson*, 409 U.S. 63 (1972) (same). Put another way, armed with a pencil and a piece of paper, people could hedge risk in the commodities market, update alarm limits in chemical processes, or convert binary-coded decimal numbers into pure binary numbers. Using the patented methods in those cases would have enhanced the user's performance dramatically, perhaps exponentially. But the Supreme Court deemed each of those patents invalid under § 101.

## IV.    Conclusion

The Court should dismiss this complaint under Rule 12(b)(6) for the above reasons.

/s/ Amit Agarwal
Amit Agarwal
*Petition for* Pro Hac Vice *pending*
14420 Edinburgh Moor Drive
Wimauma, FL 33598
Ph. 310.351.6596
amit@agarwalpernas.com

/s/ William M. Tasch
ILLINOIS ADVOCATES, LLC
77 W. Washington St., Ste 2120
Chicago, IL 60602
Ph. 312.818.6700
Fx. 312.492.4804
William.tasch@iladvocates.com
info@iladvocates.com